1815.

EARL
v.
GRIM.

EARL AND OTHERS *against* GRIM AND WIFE.

*August* 8th.    Where a testator directed his real estate to be sold by his executors, and the proceeds to be put out at interest, on good security, and the *interest* to be annually paid, in equal proportion, to A., B., and C., and the survivors of them, without limitation of time, but was silent as to any further disposition as to the principal or residuum of his real estate ; this was held to be a bequest of the *principal* as well as the interest ; it being apparent, from the introductory, and other clauses in the will, that the testator did not intend to die intestate, in that respect.

*MARGARET JAUNCEY*, of *New-York*, widow, being possessed of considerable real and personal estate, on the 29th of *August*, 1798, made her will, the parts of which, material to be stated, were as follows : " My worldly substance I do dispose of as follows ; to my step-daughter, *Sarah Jauncey*, I do give and bequeath such a portion of my household furniture," &c. " The rest of my household," &c. " I direct my executors to sell," &c. " and apply the proceeds thereof to the discharge of a debt secured, by mortgage, on my house fronting the street formerly called *King-street*," &c.

" Whereas, it hath pleased Almighty God to bless some of my connexions with affluence, insomuch, that a share in the property I may leave at my death would not add to their comfort, I have, therefore, concluded to distribute my substance among such of my relations, as, in my judgment, stand most in need of it," &c. " I do give and bequeath to my said step-daughter, *Sarah Jauncey*, during the term of her natural life, the use, rents, and profits of my dwelling-house and lot of ground," &c. " fronting the street formerly called *King*, now *Pine-street*," &c. " in which she has already had one fifth part by right of inheritance from her father," &c. " And, after her decease, it is my will that the said dwelling house," &c. " shall be sold by my executors," &c. " and the nett proceeds, after paying all charges, shall be

divided as follows: To my nephew, *George Peck*, one sixth part; to my nieces, *Ann Alstyne*, *Phebe Earl*, *Ann Willis*, and *Jane Willis*, each one sixth part, and to the survivors of them; and the remaining sixth part I do give to *David Grim*, the husband of my niece *Mary*," &c. "And I do further will and direct, that my executors may, at any time during the life of the said *Sarah Jauncey*, with her consent, sell and dispose of the said dwelling house," &c. ; "and, in such case, the moneys arising from the sale thereof (after discharging all encumbrances) shall be put out at interest," &c. "and the interest paid annually to the said *Sarah*, during her natural life ; and, after her decease, the *said moneys should be equally divided*, as is above directed, and to the survivors of them." "Whereas the house in which I now reside, in *Beekman-street*, is my property, I do will, and direct my executors to rent or sell the same, as they shall think fit," &c. ; " and in case of renting the same, the moneys arising therefrom shall be divided as follows :" (To her nephew and nieces, and to *D. Grim*, a *sixth* part each, as directed in regard to the house in *Pine-street ;*) and in case of sale, she directed as follows : ." The moneys arising from the sale, after paying all charges, shall be put at interest on good security, and the interest thereof be annually paid, in the proportions above mentioned, to the said *George Peck*," &c. " and the survivors of them." And after empowering her executors to execute deeds to purchasers, she added, " My will further is, that the rents due, or to become due, on my house in *Beekman-street*, &c. shall belong to my step-daughter, *Sarah Jauncey*, until the *first day of May next ensuing after my decease ;* and if any thing be remaining of my personal estate, after paying off the mortgage, &c. I hereby give and bequeath the same to my said step-daughter, *Sarah Jauncey*." And the testratrix appointed *David Grim*, (the defendant,) *William Rhinelander*, and *Nicholas Bayard*, her executors.

*Peck*, the nephew, died before the testatrix, leaving two

children.  *Ann Alstyne* died after the testatrix, and before *Sarah Jauncey*, without issue.  *Grim*, who was the acting executor, sold the lot in *Beekman-street*, and received the money.  The bill charged that the executors refused to sell the lot in *Pine-street*, and to divide the principal of the proceeds of the lot in *Pine-street*, according to the will; and prayed that *Grim* might be directed to sell the lot in *Pine-street*, and distribute the proceeds of the sale, and of the lot in *Beekman-street*, according to the directions in the will; and that he might account, &c.

The answer of *Grim* admitted, and set forth the will; that the testatrix died in 1800 ; that he acted solely as executor; that the testatrix was seised, &c. ; and the death of *Peck* and *Ann Alstyne*, as stated in the bill; that *Sarah Jauncey* died in 1814; that the lot in *Beekman-street* was sold for 3,580 dollars ; and there remained, after paying debts, 2,000 dollars, which had been put out at interest, and the *interest* received and paid according to the will; that the lot in *Pine-street* was unsold ; and he submitted to the court whether the plaintiffs, the legatees, were entitled to the *principal* arising from the sale of the *Beekman-street* lot, not being advised as to the true construction of the will ; and he duly accounted, &c. and was ready to sell the lot in *Pine-street*, and p ayed the direction of the court, &c.

The case was submitted to the court, on the bill and answer.

*Wilkins*, for the plaintiff.

*Slosson*, contra.

THE CHANCELLOR.  This suit was brought for the purpose of obtaining the direction of the court as to the distribution of the proceeds of the lands ordered to be sold by the executors.

There is no question as to the *Pine-street* property; the difficulty among the parties has arisen respecting the house and lot in *Beekman-street.*

This lot having been sold by the executor, and the nett amount, to 2,000 dollars, placed at interest, according to the directions of the will, it is admitted that the legatees are enti- tled to the *interest*, to be paid annually ; and the great point is, whether the *principal sum* is, also, to be distributed among those legatees, under the will, which directs " the moneys arising from the sale to be put at interest, on good security, and the interest thereof to be annually paid, in the propor- tions above mentioned, to the above legatees, and the sur- vivors of them." The will is silent as to any further dis- position of these proceeds ; and yet I am persuaded, from a consideration of the whole will, that the testatrix did not intend to die intestate as to those proceeds. In the intro- ductory part of the will, she says, " *my worldly substance I do dispose of, as follows ;*" and, afterwards, she uses these words, " whereas it hath pleased Almighty God to bless some of my connexions with affluence, insomuch that a share in the property I may leave at my death would not add to their comfort, I have, therefore, concluded to distri- bute *my substance* among such of my relations as, in my judgment, stand most in need of it," &c. And, in the de- vise of the proceeds of the two lots, she gives the nett pro- ceeds of the former lot, out and out, to the same legatees ; and she makes no disposition over of the *residuum* of her real estate ; for the last clause in the will declaring, that " if any thing be remaining of her *personal* estate. after paying off the mortgage," &c. " she gave it to her step-daughter, *Sarah Jauncey,*" alluded only to the personal estate that she left, and not to those houses and lots ; and the clause is, also, to be taken in connexion with one in the former part of the will, directing her executors to sell her furniture, plate, &c. and to apply the proceeds to the discharge of a mortgage on the *Pine-street* lot. It was the surplus of those

proceeds that the last clause in the will referred to. The moneys arising from the sale of the lot in *Beekman-street* are, therefore not touched by any residuary devise ; and if they are not bequeathed by the part of the will now under consideration, the testatrix, as to that principal sum, died intestate, contrary to her manifest intent.

The introductory part of a will is admitted to have some effect in the construction of the subsequent devises. Lord *Talbot*, in *Ibbetson* v. *Beckwith*, (*Cases temp. Talbot*, 157.,) said, that the introduction served to " show that the testator had his whole estate in view ; and if the will be general, and taking his words in one sense will make the will to be a complete disposition of the whole, whereas the taking them in another sense will make a chasm, they shall be taken in that sense which is most likely to be agreeable to his intent of disposing of his whole estate." But the intention, manifested in the introductory part, is not, alone, sufficient, without an actual devise. It must appear that the testator not only did not intend to die, but that he did not, in fact, die intestate. If, however, it be apparent from the introductory part, that the testator meant to dispose of the whole of his property, and the expressions in the residuary clause *may* include the whole, they are to be taken in the largest sense, in order to correspond with the introductory part. This was the rule adopted by Mr. Justice *Buller*, in *Smith* v. *Coffin*, (2 *H. Black.* 444.)

The interest of the proceeds of the sale of the *Beekman-street* lot, is here given to the six legatees, and the survivors of them, without limitation of time. It is an absolute bequest as to the *interest ;* and is the money, then, to be always kept at interest, so that the legatees, and their representatives, may enjoy this interest for ever? There is no sufficient reason why this bequest should be limited to the life of each legatee. The better construction is, that this was a bequest, not in joint tenancy, but in common ; for the interest is given to them " in the proportions above mentioned," *i. e.*

*to each one sixth part ;* and the words, " and the survivors of them," must be understood, consistently with this construction, to refer to such of them as should be living at the testator's death. (*Stringer* v. *Philips,* 1 *Eq. Cases Ab.* 293. *pl.* 11. 1 *P. Wms.* 97. n. S. C. *Russell* v. *Long,* 4 *Ves.* 551.) May we not apply to this case the rule acknowledged throughout the books, that a devise of the rents and profits of land is a devise of the land itself? (8 *Co.* 95. *b. Cro. Jac.* 104. 1 *Ves.* 170. 523.) In *Newland* v. *Shepherd,* (2 *P. Wms.* 194.,) the testator devised the residue of his real and personal estate to trustees, in fee, in trust, to pay *the interest* thereof for the maintenance of his grandchildren until they should come of age, or be married ; and he went no further, nor made any other disposition of his estate, and yet this was held to pass the absolute property to his grandchildren, after the age of twenty-one. This case has been questioned, and, perhaps, very justly, for there was an express limitation of the period of the payment of interest to the minority of the children ; but, in a case in which there is no such limitation, I apprehend the decision would be deemed correct. The doctrine in *Philips* v. *Chamberlaine,* (4 *Ves.* 51.,) is entirely applicable, and justifies the construction which I am disposed to adopt. In that case, trustees were directed, by will, to pay the *dividends and interest* of certain stock and funds to the legatees, share and share alike, and the survivor of them, as they attained the age of twenty-one, &c.; and the Master of the Rolls said, he had never heard that where the testator gave, for ever, and without limitation, the dividends and interest to accrue upon the residue of his personal estate, that it would not carry the whole interest; and he apprehended that where the dividends and interest of the residue were given, absolutely, to the trustee, on trust, to pay the interest and dividends to *A.,* from time to time, without any limitation of duration, it would carry the principal, even without the aid of the subsequent part of the clause.

The proceeds of the *Beekman-street* lot, principal as well as interest, are, therefore, to be distributed by the executor, equally, between the three plaintiffs, *Phœbe Earl, Ann Willis*, and *Jane Willis*, and the defendant, *David Grim*, and the personal representative of *Ann Alstyne*, deceased. The share of *Ann Alstyne* was vested in her, at her death; and the share of *George Peck*, who died in the lifetime of the testatrix, went equally to all the surviving legatees.

Decree accordingly.