## Case No. 17,146.

WARD et al. v. AMORY et al.

[1 Curt. 419.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1853.

CONSTRUCTION OF WILL—EXPRESS LIMITATIONS—POWERS—ESTATE OF TRUSTEES—RULE IN SHELLEY'S CASE—HUSBAND AND WIFE—EQUITABLE SETTLEMENT.

1. An express limitation in a bequest or devise, should not be held to be controlled by implications drawn from other provisions in the will, if the latter, by any fair intendment, can be reconciled with the former.

[Cited in Stuart v. Walker, 72 Me. 154.]

2. A power of disposal by will, does not enlarge an interest in the donee of the power, beyond what is expressly limited.

[Cited in Burleigh v. Clough, 52 N. H. 277.]

3. The quantity of estate taken by trustees depends on the purposes of the trust.

4. A devise of a fee to trustees and their heirs, with authority to sell, is consistent with an executory bequest of the fee to others, after a life estate.

5. The rule in Shelley's Case is not applicable to a devise of an equitable estate for life to the ancestor, and a legal estate, after the termination of the life estate, to the heirs.

6. On a bill by husband and wife, to recover property of the wife, the court directs a settlement on the wife, unless satisfied, upon a separate examination of the wife, that it is voluntarily waived.

This was a bill in equity to enforce the trusts of the will of Mrs. Sarah W. Sullivan. The bill was filed by [Olivia B. Ward and others] three married daughters, and one unmarried daughter, of the testatrix, (the former suing by their next friends, their husbands being also complainants,) the two surviving sons of the testatrix, (one son, John T. S. Sullivan, named in the will, having died in the lifetime of the testatrix,) and Anne Stewart Newton, a granddaughter of the testatrix, who, being a minor, also sues by her next friend, against James S. Amory and Stephen H. Perkins, the trustees named in the will. The questions raised, and the clauses in the will giving rise to them, are stated in the opinion of the court.

CURTIS, Circuit Justice. The complainants allege, that by the will of Mrs. Sullivan, they have severally become equitably entitled to certain real and personal estate, now held in trust by the respondents, and they pray to have those trusts executed, and the legal title to the property conveyed to them. The trustees claim no beneficial interest in the property for themselves, but they deny the titles, which the complainants assert in their bill. The principal question is, whether by the will, the complainants acquired the titles on which they now rely.

The clauses in the will, having a material bearing on this question, are as follows: "And I do now, therefore, hereby devise and be-

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

queathe as well the said estate of my late husband, now in trust, as aforesaid, as all other property, real, personal and mixed, to which I have any title in my own right, however derived to me, and of which I may die seised or possessed, or may rightfully claim, to James S. Amory, of said Boston, and Stephen H. Perkins, of Brookline, in the county of Norfolk, and commonwealth aforesaid, merchants, to them and to their heirs and assigns, and to the survivor of them, and to the heirs and assigns of such survivor, and to such successor or successors as the judge of probate may appoint, hereby requesting said judge of probate to make appointments as vacancies may occur, so that the trust herein provided for may be duly executed. This bequest and devise to said James S. Amory and Stephen H. Perkins, is in trust nevertheless to them, their successors and assigns, for the following purposes, viz.: First. To pay my just debts. Second. After providing for all costs and charges of executing this trust, my will is that the residue of the estate be divided into eight equal shares, and that the income or interest of one share be paid to my son James S. Sullivan, and to each of my two sons. John T. S. Sullivan and Meredith Sullivan, and to my four daughters, Sarah W. Oakey, Olivia B. Ward, Marianne A. Schley, and Hepsebah S. Sullivan, each the income of one share, and to Anne Stewart Newton, my grandchild, likewise the interest or income of one share during the respective lives of all my said sons and daughters, and of my said granddaughter. And as to the share of the estate, to the income of which, as above provided, my children are to be entitled respectively, my will further is, that in case any one or more of them die before me, their heirs at law shall respectively be entitled to have and receive the portion or portions of income that would have come to such sons or daughters, or to my granddaughter, had they survived me, and to the portion of the principal that would come to them in like manner. And such of my said sons and daughters as survive me and my granddaughter, (the coverture of the daughters, and granddaughter, if they are married, notwithstanding,) shall have power to dispose of their interest in the estate by will as they see fit. And if one or more of them die intestate, their share of the estate shall go to their heirs at law respectively. Provided always, that none but Anne Stewart Newton's maternal relations shall be recognized as heirs at law, or be considered as capable of taking under this will. And as to the shares in the estate which are to go to my daughters and granddaughter, as above provided, my will is, that they be considered their separate property, and free from all liability under any contracts of their husbands respectively, or their creditors, that is, the creditors of their husbands (their coverture notwithstanding.) Third. I do hereby authorize and empower James S. Amory and Stephen H. Perkins, before named, their as-

sociates, and any future trustee, or their successors as aforesaid, to make and execute any deed or deeds of the real estate held by them under this trust and to convey the same for any consideration which they may think proper, and in as full and ample a manner as I could do myself. And I do authorize and empower them to alien, sell, convey, and change and reinvest any personal estate of which they shall become possessed as trustees under this instrument, at their discretion; each one being responsible for his own acts only, and not for the acts of any other trustee, and I desire that no bonds be required at the probate office, of my trustees above named. Fourth. Having entire confidence in said James S. Amory and Stephen H. Perkins, I do hereby make them joint executors of this will, as well as trustees, and I request them to accept the trust, inasmuch as I shall feel that I shall have done the last service in my power for my family, if they will take upon themselves this trust and the execution thereof. In witness, &c., this 28th of September, 1848."

The complainants allege that the fee-simple in the realty, and the whole equitable interest in the personalty, passed to them; and this upon two grounds: First: because such appears to have been the intention of the testatrix, as gathered from the whole of her will. Second: because, so far as respects the realty, the rule in Shelley's Case gives the fee-simple to them, as the first takers of an estate of freehold, to whose heirs the remainder is limited.

The first of these grounds raises a question of construction; the second depends on he applicability to this case of a well-known rule of law, which operates, if at all, wholly irrespective of the intent of the testatrix. Upon the first of these inquiries, it is clear, that, by the second clause of the will, the testatrix has expressly given to her grandchild, and to each of her children, a life estate; but it has been ingeniously and learnedly argued that the words, "during the respective lives of all my said sons and daughters, and of my granddaughter," are controlled by subsequent provisions of the will, showing an intent to devise and bequeathe to them the fee-simple of the realty and the principal of the personalty. It is necessary to distinguish the realty from the personalty, because different rules are applicable to each. Where the interest or income of a fund is bequeathed through a trustee, or directly to the legatee, without any words limiting the donation of the trust, or the enjoyment by the legatee, the principal is regarded as bequeathed to him. Philipps v. Chamberlaine, 4 Ves. 51; Haig v. Swiney, 1 Sim. & S. 487; Hawkins v. Hawkins, 7 Sim. 178; Clarke v. Gould, Id. 197; Earl v. Grim, 1 Johns. Ch. 494. But if it appears from the context, that only the produce of the fund was intended for the legatee, the principal does not pass; and one mode in which this may appear is the insertion of words limiting the duration of the trust, through which alone the legatee is to take. Cooke v. Bowler, 2 Keen, 54; Scott v. Earl of Scarborough, 1 Beav. 154; Clowes v. Clowes, 9 Sim. 403; 2 Rop. Leg. 1477, and cases there cited. In this will, there are not only the express words confining the interest of the legatees in their income to their lives, but there is no provision for extending the duration of the trust, through which they are to take, beyond their lives; no duty being imposed on the trustee to receive the income, or pay it to any one, after the decease of the legatees. Standing alone, therefore, there would seem to be no doubt that this clause in the will would not bequeathe the capital or principal to the legatees, but only the income during their lives. Indeed, this has not been questioned by the complainants' counsel; but he correctly argues that we must look at the whole will, and he insists that other parts of it are sufficient to control this clause, and to show that the testatrix really intended to give the whole fund.

There is one general observation, which I think entitled to weight; in construing a will, so inartificially drawn as this is, it is unsafe to set aside the express terms employed by the testatrix in the very clause in which the bequest is made, because it is found not easily reconciled, or perhaps not completely reconcilable with language used in other parts of the instrument. It may reasonably be assumed, that when the testatrix made the provision that her children should take the income through trustees during their lives, she was aware of the effect of the terms she employed, and intended what she there expressed; while in making other provisions subsidiary to this bequest, she might be inattentive to the effect of her language upon the bequest already made, and which may be supposed in some degree to have passed out of her view; and, therefore, when an intent has been once clearly expressed in a will, and the instrument then goes on to deal with other subjects, this clear intent should prevail, unless it is plainly modified or controlled by what is subsequently said. In this case, it is argued that the power of disposal by will, shows clearly the testatrix meant to bequeathe, not the income merely, for life, but the whole fund. The power is in these words: "And such of my said sons and daughters as survive me, and my granddaughter, (the coverture of the daughters and granddaughter, if they are married, notwithstanding,) shall have power to dispose of their interest in the estate by will as they see fit; and if one or more of them die intestate, their share of the estate shall go to their heirs at law respectively." That a power of disposal by will does not, of itself, enlarge a limited interest, is well settled. A bequest to A for life, and after his death to such person as he may appoint, by will, to receive the same, gives only a life estate to A, and no one can claim through him, save by an execution of the power. Croft v. Slee, 4 Ves. 60; Nannock v. Horton, 7 Ves. 391; Bradley v. Westcott, 13 Ves. 445.

But it is insisted that the testatrix speaks of what is to be devised by the children, as their interest in the estate, and what is to be inherited as their share of the estate; and that this necessarily implies that the interest of each child was not to be limited to his or her life. This argument must be admitted to have much weight, but when examined by all the lights gained from the whole of the will, it is not decisive. The testatrix had previously directed that her estate should be divided "into eight equal shares, and that the income or interest of one share should be paid to each of her children and her grandchild, during their respective lives." She is now providing further, that each may dispose, by will, of that share which had been set apart for his or her use, and, failing to make a will, that it should go to his or her heirs at law. Apparently she considered each of these shares as so bequeathed that it might be spoken of as the share of the child to whose use it was devoted during life, at whose disposal, by will, it was left, and to whose heirs it was to go in case of intestacy. And she uses the words, "their interest in the estate," as synonymous with "the shares in the estate set apart for their use." In the very next clause this is apparent; for she there uses the phrase, "and as to the shares in the estate, which are to go to my daughters and granddaughter, as above provided," &c. Now, the manner in which those shares were to go to them, "as above provided," was for life; so that the testatrix here uses the words, "the shares in the estate which are to go to my daughters," simply as indicating the shares set apart for their respective use. A few sentences above, she said, "and as to the share of the estate to the income of which, as above provided, my children are to be entitled respectively," &c. Here she has inserted the full and accurate description of the subject. In the other clauses, she describes more loosely and inaccurately; but it is apparent she all along refers to the same subject. It is true, that if a power of disposal by will, annexed to an express estate for life, with a remainder, in case of intestacy, to the heirs of the first legatee, would amount to a gift of the whole fund, this will must so operate; for all these things the testatrix undoubtedly intended. But it has been already stated that the power does not enlarge the interest, and it is clear the heirs at law may take personalty as purchasers, if the testatrix so intended. That she did so intend in this case, appears not merely from the express limitation for life, and the gift to the heirs in remainder, but from another clause, which necessarily depends altogether upon the heirs taking as purchasers by way of remainder. That clause is: "Provided always, that none but Anne Stewart Newton's maternal relations shall be recognized as heirs at law, or be considered as capable of taking under this will." I do not attach very great importance to the concluding words, though they indicate that the testatrix understood the heirs were to take under her will,

and not by descent or the statute of distributions; but it is plain that the whole clause must be stricken out of the will, as inoperative, if the heirs do take by descent or from the ancestor, for, in that case, all who are by law entitled, must so take. To strike this clause out of the will, would be a far graver thing than to put on the words, "their interest in the estate," an interpretation which, though not consistent with their natural meaning, does no violence to what may be fairly considered the sense in which they were used. What is said above applies also to the language of the codicil, upon which some reliance was placed, and it needs no further comment. My opinion is, that the children and grandchild took only an equitable interest in the income of their respective shares during life.

As to the realty, the intent of the testatrix was the same as in respect to the personalty, and there is no rule of law to prevent the execution of that intent unless the rule in Shelley's Case is applicable. To decide this question, it is necessary first to determine what estates are devised by this will. It is a settled rule, that trustees take and hold under a will just that quantity of interest necessary to enable them to discharge the duties of their trust. Neilson v. Lagow, 12 How. [53 U. S.] 98; Webster v. Cooper, 14 How. [55 U. S.] 499. To these trustees and their heirs, the real property is devised in trust: 1. To pay debts. 2. To divide the whole property, real and personal, into shares. 3. To pay the income of each share, after deducting the expenses, &c., to a child or grandchild for life. 4. By a clear implication, though it is not expressed, to hold to the use of the appointees by will of such child; and, in default of any appointment, to the use of its heirs at law.

From this view of the purposes of the trust, there can be no doubt that the legal estate in each child, during the life of that child, was in the trustees. See Mr. Jarman's note to 1 Pow. Dev. 221. And it is equally clear, that independent of the power of sale in the trustees, which will presently be noticed, the appointees or heirs, as the case may be, would take a legal estate by way of executory devise. Nor is the power of sale in the trustees inconsistent with this; because, though the power implies that the trustees have a fee-simple vested in them, and may sell and convey one, and thus defeat the executory estates in the particular land sold, yet there is no difficulty in substituting one fee for another by way of executory devise, or in making this substitution depend upon such contingencies as are provided for in this will. So that though a fee-simple is actually given to, and is to be held by, the trustees, as long as the trust continues, if no sale be made, and though it is contingent whether appointees or heirs are to take, yet, where the trust is fully performed, and the contingency is determined, the appointees or the heirs will take at once a legal estate in fee-simple, as purchasers under the will, by way of executory devise, the limita-

tions being in effect to Amory and Perkins in fee, provided that if they shall not have sold the land before the death of the child or grandchild, then it is to go to the appointees or heirs of that child or grandchild in fee. See 1 Pow. Dev. 187. And it is not material whether this estate is taken by the appointees or heirs by way of a shifting or springing use, the fee being in the trustees to serve that use, or by way of executory devise by force of the statute of wills, for in either event it is a legal estate in fee-simple. It follows that the rule in Shelley's Case is not applicable to this will; because the estate limited by it to the ancestor is an equitable estate for life, and the estate limited to the heir is a legal estate in fee. "It frequently happens," says Mr. Powell (Pow. Dev. 432), "that a testator devises lands in trust for a person for life, and after his death for the heirs of his body, but gives the trustees some office in regard to the tenant for life, that causes them to retain the legal estate in respect of his interest, but which, being confined to the estate for life, does not prevent the limitation to the heirs of the body from being vested in them. In such cases, they take as purchasers." See the cases cited by him in loco, and in volume 1, p. 221, note. Playford v. Hoare, 3 Younge & J. 175; 6 Greenl. Cruise, 312.

But there are other reasons why the rule in Shelley's Case is not applicable to this will. If, as is mentioned by the complainants, the provision of the will, that none but Anne Stewart Newton's maternal relations shall be decreed heirs at law, so as to take under the will, applies not to the heirs of the granddaughter alone, but to the heirs of all the children, then the limitation is not to the heirs at law, but only to a particular class of heirs; and as the same persons are not to take, upon whom the law would cast the inheritance, the limitation is not within the rule in Shelley's Case. Webster v. Cooper, 14 How. [55 U. S.] 488. I do not mean to decide the question whether this is the true interpretation of the will, because parties not before the court may be interested in it, and I do not deem it essential to the case to decide it. But I take it as the interpretation asserted by the complainants themselves; and, if correct, it destroys this ground of their claim. But independently of this, I am of opinion, that the statute of Massachusetts governs this case. That statute is as follows: "Where lands are given by deed or will to any person for life, and after his death to his heirs in fee, or by words to that effect, the conveyance shall be construed to vest an estate for life only in such taker, and a remainder in fee-simple in his heirs." Rev. St. c. 59, § 9.

Two reasons are assigned why this statute does not include this case. First, that a power of disposal by will is given to the ancestor. Second, that a power of sale is given to the trustees. But the mere existence of these powers does not prevent the limitation to the heirs from taking effect. Notwithstanding their existence, there is still a limitation to one person

for life, and after his death, to his heirs in fee. If there were not, there would be no ground to maintain that the rule in Shelley's Case was applicable; for the only reason why this case is said to be within that rule is, that the will gives the remainder in fee to the heirs of the ancestor to whom a life estate is given; and if so, the case is within the words of the statute. A power, given either to the tenant for life, or to a trustee, by the execution of which the remainder may be defeated, not being inconsistent with the application of the rule in Shelley's Case, ought not to be held inconsistent with the application of the statute, which was designed to abolish that rule in the cases it describes. If the power is duly executed, it defeats the estates given to the heirs. But, as the rule in Shelley's Case does not require that they should be indefeasible. so neither does the language, nor the apparent object of the statute, require that they should be indefeasible.

The purpose of the statute was to change the law, so that the real intent of testators should not be defeated by a technical rule, based on certain fixed principles, which have no place in our jurisprudence. The intention of this testatrix to have the ancestor take only an estate for life, and the heirs, after her death, take the fee, if no will or sale should be made, is as clear, and as justly entitled to be executed, as it would have been if no contingency existed. And as the words of the statute are satisfied, I can perceive no good reason why this case should not be governed by it. My opinion is, that the children and grandchild took only an equitable interest for life in the realty.

It remains to consider the effect of that clause in the will which disposes of the portion of a child dying in the lifetime of the testatrix. Reduced to those words only which are applicable to the event that happened. the decease of one of her sons, its language is as follows: "In case one of my sons should die before me, his heirs at law shall be entitled to the portion of income that would have come to him, had he survived me; and to the portion of the principal that would come to them in like manner." I think the purpose and effect of this clause are, to put the heirs at law of a son. dying in the lifetime of the testatrix, in the place of the son, so far as respects the income of his portion, and at the same time, to give to them the right to the principal fund. which they would have had. if this son had survived the testatrix, and afterwards died intestate. So that, on the decease of the testatrix, the heirs at law of her son. John T. S. Sullivan, became entitled, not only to the income of one eighth part of the estate, but also to the capital of the personalty, and the fee of the realty. In other words, they have succeeded both to what would have been his rights and their own, had he survived the testatrix and died intestate. They have thus the entire beneficial interest in the property, and may call for a conveyance of it at pleasure. The will provides for the duration of the trust, as to each child's share, while that child lives. No other termination of

the trust is fixed by the will. But this is manifestly inapplicable to the case of a child dying before the testatrix; in which case the heirs at law of such child, becoming entitled both to the income and principal, the trust is to continue no longer than those heirs may choose to require its execution. They do require it by this bill; and it must be decreed, subject to the prior trust to pay the debts of the testatrix.

I am also of opinion, that the provision of the will, requiring the shares of the daughters and granddaughter to be held as their separate property, is not applicable to what they take under the will, as heirs at law of their brother. The language of the will points only to the shares set apart by the trustees, for their several use, during their respective lives, pursuant to the directions of the will; and therefore, the married daughters and their husbands, and the unmarried daughter, and the two sons, are entitled to receive one eighth part of the estate; but the court, in pursuance of the usual rule which is administered when a husband comes into equity to recover property of his wife, must consider the married daughters entitled to a competent settlement out of this fund, unless satisfied by their separate examination, before a commissioner. that the right is voluntarily waived.

One direction in this will is. that after the payment of debts, the trustees shall divide the whole property into eight equal shares. This has not been done. for reasons stated in the answer of the trustees, and which seem to be sufficient to have thus far excused the performance of this duty. At any rate, no complaint is made that any loss or embarrassment has been thus far occasioned by its omission. But it is a plain direction of the will, in which not only the legatees for life, but those who may hereafter come into the executory estates, as appointees or heirs, are interested, that each one may bear the losses and receive the profits appropriate to the eighth part in which he or she is interested; and it is the duty of the court, upon this bill, to see that this direction is obeyed.