WILLIAM MORROW, administrator *cum testamento annexo* of ROBERT CLELAND, deceased,

*vs.*

GEORGE C. ROBINSON and ALBERT N. ROBINSON, executors of the last will and testament of SARAH A. ROBINSON, deceased, ELIZABETH E. O'DANIEL, administratrix of WILLIAM F. O'DANIEL, deceased, CHARLES L. BUTE and ISAAC KOONS, ISAAC JEANES, JAMES B. ROUDET, ARMOND COURT, and MARIA TERESSE MELIZET ROUDET, trading under the name and firm of ROUDET and COMPANY.

*New Castle, Sept. T. 1872.*

The presumption of payment after twenty years applies to judgments, there having been no payment of interest, acknowledgement of indebtedness or demand for payment within that period, nor evidence serving to rebut the legal presumption arising from the lapse of time.

66—DEL. CH. IV.

Where the presumption of payment after twenty years was applied to judgments under a decree *pro confesso*, a bond was taken from the parties held entitled to the fund, which would otherwise have been applicable to the judgments under *Rev. Code*, *Ch.* 95, *Sec.* 5.

BILL OF INTERPLEADER.—The facts set forth in the bill, and not controverted, were as follows :—

Dawson Nelson bequeathed to his executors the sum of one thousand dollars in the following words : "Sixth,—"I give unto my Executors, hereinafter named, one thou-"sand dollars ; in trust, nevertheless, to receive the "interest and income thereof, and lay the same out from "time to time, at their discretion, or at the discretion of "the survivor of them, for the use and benefit of my "nephew, Robert Cleland ; and I do hereby athorize and "empower the said Robert Cleland to dispose of the same "by will."

The testator died December 14, 1861, and letters testamentary were granted to the complainant and Sarah A. Robinson, the Executor and Executrix named in the will, and they were duly qualified as such. Afterwards, Robert Cleland, in execution of the authority given to him in the will of his uncle, in and by his own last will and testament, duly made and published, disposed of the said sum of one thousand dollars in the manner following : "Whereas my uncle Dawson Nelson, by his last will and "testament, bearing date the twenty-second day of May "A. D. 1861, did give and bequeath certain moneys in "words following, viz.: 'Sixth. I give unto my Execu-"tors hereinafter named, one thousand dollars, in trust, "nevertheless, to receive the interest and income thereof, "and lay the same out from time to time, at their discre-"tion, or at the discretion of the survivor of them, for the "use and benefit of my nephew, Robert Cleland, and I do "hereby authorize and empower the said Robert to dispose

"·of the same by will,' as in and by said will, since his " decease, duly proved and filed of record in the Register's " office in and for New Castle County aforesaid, recourse " being thereunto had, will more fully appear. Now there- "fore, in pursuance of the authority to me given in the will "of my uncle Dawson Nelson above recited, I will and " direct that my funeral expenses, and the charge for "nursing, boarding and care of me in my last sickness, " shall be paid, and that the residue of said one thousand " dollars, together with all my other estate, shall go and · " be paid over to my sister Sarah A. Robinson in considera- " tion of her kindness and attention to me."

Robert Cleland died August 20, 1863, and there being no executor named in the will, letters of administration, *cum testamento annexo* were granted to the complainant. The complainant received the legacy of one thousand dollars bequeathed by Dawson Nelson with the interest thereon as the sole assets of Robert Cleland, and after- wards passed two separate accounts of his administration, including a first account, October 7, 1864, showing a balance of $828.05, and a second and final account April 10, 1876, showing a final balance in the hands of the com- plainant of $800.05.

Sarah A. Robinson died August 18, 1868, having made a will in which, after a special legacy to her daughter, she devised and bequeathed all the rest and residue of her estate, both real and personal, to the defendants, George C. Robinson and Albert N. Robinson, and appointed them her executors, and they were, after her death, duly qualified as such.

The bill alleged that the defendants George C. Rob- in son and Alfred N. Robinson, as executors of Sarah A. Robinson, deceased, claimed a right to receive the said sum of $800.05 and that the same passed to the said Sarah A.

Robinson free from liability, in the hands of the complainant, for the payment of any debts due by the said Robert Cleland at the time of his death, other than such debts as by his will, he directed to be paid out of the same.

The complainant found of record in the Superior Court, some judgments recovered against the said Robert Cleland during his lifetime and unsatisfied of record, and which appeared to be liens upon any money or other property in the hands of the administrator belonging to his estate. These were:

1. A judgment, No. 433, to the November Term, 1850, in favor of William F. O'Daniel for $65.00 and interest from April 29, 1851.

2. A judgment, No. 99, to the November Term, 1851, in favor of the defendants Charles L. Bute and Isaac Koons, trading as Bute & Koons, for $281.14, with interest from November 24. 1851.

3. A judgment, No. 104 to the November Term, 1851, in favor of Isaac Jeans, the defendant, for an amount to be ascertained by the Prothonotary, but not yet ascertained.

4. A judgment, No. 105 to the November Term, 1851, in favor of the firm of Roudet & Co., also made defendants, and for an amount to be ascertained by the Prothonotary but not ascertained.

William F. O'Daniel being dead, his administratrix, Elizabeth F. O'Daniel, was made a party defendant.

The defendants retained the balance of Robert Cleland's estate, and alleged that he was indifferent to whom he should pay the same, but was advised that he could not safely pay it, except under a decree of the Court: and he tendered himself ready and willing to pay the said sum

into court to be disposed of according to such decree as might be made in relation thereto ; or to pay the same to such person or persons as might be decreed to be legally entitled to receive it.

The defendants George C. Robinson and Albert N. Robinson admitted the facts stated in the Bill, and the existence of the judgments upon the records of the Court, and that no satisfaction had been entered, but alleged that ·the judgments in favor of O'Daniel and Bute and Koons had been satisfied in law, and that at the November Term 1850 there were upon the records of the Court three other judgments against Robert Cleland, one, No. 251, to November Term 1851, in favor of Abraham Boys, for the real debt of $600 and interest from December 3, 1850 ; another in favor of George Cleland, being No. 410 to the same Term, for a real debt of $1124, with interest from April 19 1851, and another in favor of A. E. Stimson, being No. 418 to the same Term, for a real debt of $502,01, with interest from April 22, 1851.

Execution had been issued on judgment No. 410, November Term 1850 and a sale of the personal property made thereunder, from which there came into the hands of the sheriff $2003.13, being sufficient as would appear by computation, to pay the judgments Nos. 251 and 410, to November Term 1850, together with the costs on the same, and to leave a small balance applicable to the judgment,. No. 418, to November Term 1850. Subsequently, under an execution issued upon the last mentioned judgment, a sale was made of the real estate of the defendant and a return thereof was made by the sheriff of "advertized " and sold September 10th to Wm. F. O'Daniel for $850."

There was no legalized record to show how this fund was applied, but it appeared from an examination of the records kept by Samuel G. Chandler, then the sheriff of

New Castle County, that the costs entered upon the execution, and first paid out of the sum of $850, amounted to $51.87, and that opposite to the record of said execution on the sheriff's docket, was the following receipt :

"Received December 12, 1851, of Samuel G. Chandler, "Sheriff, Four hundred forty-three dollars fifty-nine cents, "amount of said purchase money applicable to the opposite "stated *venditioni exponas.*"

(Signed)                L. E. WALES,

Attorney for plaintiff.

There being no other receipt upon the record, the balance, amounting to $354.54, after deducting the costs, $51.87, and the amount receipted for to the sheriff by the complainant in the execution, was more than sufficient to pay the two judgments referred to in the Bill whose amounts have been ascertained ; and the balance being legally applicable to these judgments, the defendants alleged that the judgments were in law satisfied.

The defendants also set up the claim that the funds in the hands of the complainant could, in no event, be applicable to these judgments, even if they were not satisfied.

*G. H. Bates*, for the complainant, filed the bill and also, on application to the Court, obtained leave to appear for George C. Robinson and Albert N. Robinson, two of the defendants.

*Lore* appeared for Elizabeth E. O' Daniel, administratrix of Wm. F. O'Daniel, deceased, and publication was made for the other defendants who were non-residents of the estate.

The complainant was ordered to pay into Court the funds remaining in his hands as stated in the bill, which was accordingly done.

The case came on for a hearing *ex parte* and an argument in writing was presented by *G. H. Bates*, for the executors of Sarah A. Robinson, deceased :—

A preliminary question to be considered is, whether the final decree is to be entered upon the allegations of the bill, taken to be true, or whether the complainant is put to prove his case and produce the documents or records referred to in the bill.

It would seem that the former practice is indicated by the language of rules 32, 33 and 34. The weight of authority appears to be ; when charges of the bill are distinct and certain, proof is dispensed with. 1 *Dan. Chr. Pr.* 506, *and note* 4.

Three questions arise upon the case made by the bill and answer :—

1. Did Robert. Cleland take under his uncle's will, such an interest in the fund in question as to render it liable for his debts generally, after his death?

It cannot be so liable unless he is held to have taken an absolute interest in it. This could only be by the application to this bequest of the rule of law that the gift of the income or produce of personal property vests by implication the principal fund or property absolutely in the legatee. This rule is stated fairly, and as broadly as would be proper, as follows : " *Prima facie*, a gift of " the produce of a fund is a gift of that produce in per- " petuity ; and is consequently a gift of the fund itself, " unless there is something on the face of the will to show

" that such was not the intention." *Adamson vs. Armitage,* 19 *Ves.* 417 ; 2 *Rop. on Leg.* 1478.

Thus, it appears to be a rule of intention. What then, may be gathered from the will, as the intention of the testator in making this legacy? Four considerations lead us to the conclusion that he did mean not to give Robert Cleland an absolute interest in the fund.

(1.) There are in the will, several legacies of $1000, each, (the same sum) to the other nephews (standing in the same relation) absolutely; therefore, in varying the terms of this legacy to another nephew of the same amount, the inference is a fair one that the testator intended to make it something different from an absolute interest; it could not be more, it might be less. The testator evidently knew how to give an absolute interest, if he wished to do so.

(2.) It is a natural inference from this bequest, that the testator desired to give Robert Cleland the benefit of this $1000, and yet keep him from wasting the principal. If we construe this as an absolute interest, it would be a construction which would have made the fund liable for debts, and thus have defeated the intention. If that construction is abandoned, only one other is possible; that it was, as it purports to be, simply a life interest with a power of disposal, and this construction carries into effect the testator's intent.

(3.) The terms of the bequest itself. The income is not even to be paid to Robert Cleland, but the executors are " to receive the interest and income thereof and lay " the same out from time to time at their discretion, or " the discretion of the survivor of them, for the use and " benefit of my nephew Robert Cleland."

Robert Cleland does not even take an absolute in-

terest in the income, at least not so as to receive it—far less in the fund itself.

(4 ) The ultimate power of disposal was by will alone, to take effect after Robert Cleland's death. I shall refer to this hereafter to shew what meaning the law gives to this feature of the devise ; but it is noted here as evidence of intention apparent on the face of the will.

Upon the whole will, it seems impossible to resist the conclusion that, under the rule, as broadly as it is above stated, it would be impossible not to find that the clearly apparent intent of the testator positively forbids the enlargement of this bequest to an absolute gift of the principal of the fund. But we are not forced to rest the case here. There is a well defined class of cases which may be said to be exceptions to the general rule, that a gift of the income of personalty carries by implication the principal ; and from this class of cases is derived a new rule of construction, which precisely govern the case in hand. This rule is thus stated :—

"When a particular estate is limited in the instrument "*followed* by a declaration that the legatees may dispose "of the fund, he will not take a beneficial interest in the "capital ; he will have a mere power to dispose of it and "no more ; because when a limited interest is expressly "given, its enlargement by implication will not be per- "mitted." 1 *Rop. on Leg.*, 644.

Out of very many cases on the general subject, there are some which appear to be in point. *Reid vs. Shergold*, 10 *Ves.*, 370 ; *Robinson vs. Cleator*, 15 *Ves.*, 526 ; *Reith vs. Seymour*, 4 *Russ.*, 263 ; *Soames vs. Martin*, 10 *Sim.* 288.

There is a distinction clearly drawn between gifts of income with an absolute power of disposal by deed in the

67—DEL. CH. IV.

lifetime of the legatee, or will, which are sometimes held to carry an absolute interest, because the power of disposal is at his option to be exercised in his lifetime ; and gift of the income, with a power of disposal by will alone, which are always construed to be merely interests for life. *Bull vs. Vardy,* 1 *Ves. Jr.,* 272, *note* 3 ; *Bradly vs. Westcott,* 13 *Ves., Jr.,* 445 ; *Anderson vs. Dawson,* 15 *Ves. Jr.* 536 ; *Archibald vs. Wright,* 9 *Sim.,* 161.

Two cases in which the Court held the bequest to carry the absolute property support this position and affirm the distinction. *Barford vs. Street,* 16 *Ves.,* 135 ; *Irwin vs. Farrer,* 19 *Ves.* 86.

If it is considered that the authorities cited sustain the position taken, it need hardly be added that this case is within the rule, and that Robert Cleland took only a life interest, with power of disposal. It follows as a matter of course, that the fund cannot be reached by a judgment against him either before or after his death. A judgment against him could only reach his interest, which was only in the income, and terminated at his death.

2. Even if these judgments were proper to be paid out of this fund, they are more than twenty years old ; and after twenty years non-demand, unexplained, the Court will presume a payment without the aid of a jury. *Bouv. Law Dict. Tit. "Payment," P.* 16.

Payment of a bond or other specialty, is presumed after a lapse of twenty years. *Best on Presumptions,* 187-9 ; *Angell on Limitations,* 95 ; *Oswald vs. Leigh,* 1 *T. R.* 271.

A judgment seems to have the nature of a specialty, so far as to be subject to this presumption. *Angell on Lim.* 82 ; *Pease vs. Howard* 14 *Johns.* 479.

This presumption has been applied to judgments. 1 *Gr. on Ev.* 339 ; *Cape vs. Humphreys,* 14 *S. & R.* 15.

It is undoubtedly true that this presumption of payment may be repelled by proof of insolvency and other evidence that the debtor had not means or opportunity of paying it ; and it has been also held that evidence of other unsatisfied judgments is admissible as tending to prove the insolvency and rebut the presumption of payment. *Ins. Co. vs. Covert*, 29 *Barb.*, 435. And the presumption of payment, until rebutted or disposed of by evidence, has all the force and effect of plenary and effectual proof of payment, and the jury are bound so to regard it. *Thompson vs. Thompson*, 2 *Head*, *Tenn.*, 405.

In this case there is no direct proof of insolvency. The undisputed facts of the existence of the judgments, and that Robert Cleland was sold out by the sheriff as far back as 1851, are the only circumstances tending to establish it. There are many reasons, however, why the evidence is insufficient. Robert Cleland directs the charges, for the nursing, boarding and caring for him in his last illness to be paid. The amount of such bills paid, indicates a very small amount due for board and the like charges at the time of his death. The foundation of the presumption is, failure of the creditor to make a demand. In this case, he still makes no demand ; and it does not appear that the presumption can be shaken until there is a demand ; that being made, all that is required by the creditor is, to show a reason for not making an earlier demand.

In the present case, for nearly ten years, a demand could be made good ; and the entire absence of it since Robert Cleland's death, strengthens the presumption and repels the idea that the demand was abstained from on the ground of insolvency. The effect of a rebuttal of the presumption of payment by proof of insolvency is nothing more than an inference that because of the insolvency the creditor delayed his demand. If the debt could be

collected and the creditor fails to do it, his. delay to do so will destroy the inference that insolvency was a cause of non-demand and give rise to the natural presumption that payment was the reason of it.

A court of equity should not aid so extreme a want of diligence as is manifested here by mere inference. The grounds upon which the inference of insolvency is based are themselves insufficient. There is no direct proof of it ; the sale of the property by the sheriff is not conclusive. It is a presumption of fact that a young man will recover from such failure. The facts of this case show that he did accumulate $3,000, as a very young man, and it is presumable that he could have paid these debts, amounting to only $300 or $400, in ten years ; and this inference is strengthened from the fact that no other judgments appear against him. The terms of his uncle's bequest constitute too trifling a circumstance to warrant an inference of insolvency. He may have been wasteful, but not insolvent.

There is no case in which the presumption has been held rebutted, except at suit *i. e.* demand, of plaintiff ; there is no case wherein insolvency is held rebutted or presumed, except where there has been direct proof of it. This seems to be a just rule, viz. that where the creditor, with due diligence, makes demand, even after twenty years, and shows insolvency of the debtor, or his inability to pay, as a reason for delaying his suit, then the presumption will be repelled ; and this reconciles the authorities. Circumstances merely rendering the collection of the debt improbable, as the poverty of the debtor, are not admissible to rebut the presumption of the payment. *Rogers vs. Judd* 5 *Vt.,* 236.

Nor will the fact that the debtor, at a certain time during the period relied on to make the presumption, was a bankrupt, rebut such presumption. *Daggett vs. Tallman,*

8 *Conn.*, 168. The presumption is not rebutted by evidence
that the defendants are in extremely imbarrassed circum-
stances, and, in the opinion of those who knew him,
incapable of paying the debt.   *Williaume vs. Gorges.* 1
*Campb.*, 217.

3. It clearly appears upon the facts of this case, that
funds came into the hands of the sheriff applicable to these
judgments, and sufficient to pay them.   This is in equity,
if not in law, a legal satisfaction.

*Lore*, who appeared for the only one of the judgment
creditors who was served with process, did not argue the
case, and made no claim to the fund, being satisfied that the
excutors were entitled to receive it.   The other defendants,
however, not being served or represented, a consent decree
was not practicable.

Having held the case for sometime under advisement,
THE CHANCELLOR considered that more than twenty
years having elapsed since the judgment was rendered,
and there being no evidence in the case that within the
said period of twenty years, there had been any demand
for the payment of said judgments, or either of them, or
that there had been any payment of interest thereon or
acknowledgment of the sum remaining unpaid, nor evi-
dence of any fact or facts serving to rebut the legal
presumption arising during such lapse of time that the
said demands had been paid ; that, both in consideration
of the lapse of time and legal presumption of payment
arising therefrom, and from the allegations of the answer
of George C. Robinson and Albert N. Robinson, taken
as confessed under the decree *pro confesso*, the said
judgments must be held to have been paid and discharged.

A decree was therefore entered directing the payment
to George C. Robinson and Albert N. Robinson, as execu-

tors, of the sum deposited in bank. It was further ordered, pursuant to the statute,* that, before receiving the said sum, the said George C. Robinson and Albert N. Robinson should execute and deliver to the Register in Chancery to be filed in the cause, their joint and several obligation, to be taken in the name of the State of Delaware, but for the use of any person or persons who might hereafter be adjudged or decreed by the Court to be interested in, or entitled to the said sum of money, the bond to be in the penal sum of two thousand dollars with a condition that the obligors should, at all times, be fully bound to do and perform any and all orders of the Court as might thereafter be made for or touching the said sum.

NOTE. This case though uncontested presented some very interesting questions which, while it was under consideration underwent a careful and somewhat elaborate examination by the Court. There having been argument only on one side as appears by the report, it is proper to add here a reference to some cases upon the general subjects involved, which were examined by the Chancellor which do not appear in the written argument filed. It is known to have been the purpose of the Chancellor to write an opinion, but this was never done, and there appear among his papers only the rough memoranda of his examination of the legal questions involved.

I. The authority was given to the solicitor of the complainant to appear for one or more defendants, upon the authority of a precedent referred to, when the like course had been adopted by Chancellor Harrington. In the case of *Webster vs. McDaniel, et al.*, 2 *Del. Ch.* 297, the solicitor for the complainant, in a bill of interpleader, was permitted to appear for and argue the case for one of the defendants. The record of that case shows that the appearance was entered by special leave of the Court.

In a bill of interpleader the complainant being indifferent between the parties, the duty of his solicitor is ended, as such, when the bill is filed and he has no interest in the decree except that the bill shall be adjudged to be properly filed. Such an appearance for the defendant can, however, only be entered by special leave of the Court and upon consideration of the special facts of the case and the conclusion that the case is a proper one for granting the leave.

In *Houghton vs. Kendall, et al.*, 7 *Allen* 72, upon a bill, in the nature of

* Rev. Code, ch. 95, Sec. 5.

Note.

a bill of interpleader, filed by executors, and in which certain defendants were not represented, the following statement is made ;—" At the argument, the " children of Edwin were not represented, and the counsel for the executors, " after reading the papers, were going on to submit their views upon the " questions involved : but the Court interposed, the Chief Justice saying that " the whole duty of an executor, in a case like the present, is performed, " when he has brought the parties in interest before the Court ; and that, con- " sidering his relation to the parties and the fact that he cannot be allowed to " charge the estate for the costs of an argument, he ought not to take any part " in the discussion.    Subsequently, however, objection being waived, and " some peculiar reasons appearing to show that there was no danger of collu- " sion, the Court allowed the argument to proceed, remarking that this case " must not be drawn into a precedent , as the rule which had been announced " had been adopted by the Court upon full consideration."

It is stated in a note to this report that " subsequently, in March 1864, the " Court passed a general rule that in bills by executors and trustees to obtain " the instructions of the Court, and in bills of interpleader, or in the nature of " interpleader, no solicitor or counsel for the plaintiff shall appear or be heard " or act for and in behalf of any or either of the defendants."

2. Upon the point that a general power of appointment, if executed, whether by deed or will, subjects the fund to the debts of the appointor, the following authorities may be referred to ; 2 *Wms. on Ex'rs*, (*4th Am. Ed.*) (1435) ; 2 *Sugd. on Powers* (30) ; 2 *Rop. on Leg.* 1476 ; *Bainton vs. Ward*, 2 *Atk.* 172 ; *Townshend vs. Wyndham*, 2 *Ves. Sr.* 1-9 ; *Harrington vs. Harte*, 1 *Cox* 131 ; *Jenny vs. Andrews*, 6 *Madd.* 164 ; *Elton vs. Sheppard*, 1 *Bro. C. C.* 532 ; *Phillips vs. Chamberlayne*, 4 *Ves.* 53 ; *Page vs. Leapingwell*, 18 *Ves.* 463 ; *Stretch vs. Watkins*, 1 *Madd.* 252 ; *Clough vs. Wynne*, 2 *Madd.* 188 ; *Haig vs. Sweney*, 1 *Sim. & Stu.* 490 ; *Earl vs. Givin.* 1 *Johns. Ch.* 494

This doctrine is recognized though with a criticism in 1 *Sto. Eq. Jur.* 176, *note* 1.

3. Upon the question of the presumption of payment, the following cases are to the point that the presumption may be repelled generally by circum- stances explaining the delay. *Bailey vs. Jackson*, 16 *Johns.* 210, 214 ; *Dunlop & Co. vs. Ball*, 2 *Cranch.* 180 ; *Jackson vs. Hotchkiss*, 6 *Cow.* 401.    Note the language of 1 *Gr. on Ev. Sec.* 39, and 2 *Bouv. Law Dict.* 313.

See as to the general nature of the presumption, *Durham vs. Greenly*, 2 *Harring.* 124, and *State vs. Lord's adm'r*, 3 *Harrring.* 421.

The following authorities are directly on the point of insolvency. *Hillary vs. Waller*, 12 *Ves.* 266 ; *Fladong vs. Winter*, 19 *Ves.* 195 ; 1 *Cow. & Hill's notesto Ph. on Ev.* 506, also 512-13.