FRANKLIN D. LOCKE and Others, as Executors of JONATHAN SCOVILLE, Deceased, Respondents, v. MAGDALENA RINGS, Individually and as Guardian of HENRY C. RINGS, and Another, Appellants, Impleaded with Others, Defendants.

*Declaration of trust — effect of a reference thereto in a will — violation of the statute against perpetuities.*

In 1887 Jonathan Scoville executed an alleged declaration of trust relative to four certificates of stock, and therein stated that he set apart these certificates for the following purposes, to wit: That the net income or dividends should, from time to time, be apportioned into ten equal parts, of which three should be paid over for the use and benefit of Magdalena Rings, three for the use and benefit of Anna M. Rings, two to be paid to Henry C. Rings during life and two to be paid to Minnie M. Rings for life; that in case of the decease or marriage of Magdalena Rings, or of the decease of Anna M. Rings, whichever event should first happen, the portion allotted to such person should be paid over to the use and benefit of St. John's Episcopal Church, and the portion allotted to the other should, after her decease (or marriage, if it be the said Magdalena), be paid over to the use and benefit of the Buffalo Orphan Asylum; that, upon the decease of the said Henry C. Rings, his portion should thenceforth be paid to the use and benefit of the St. Vincent's Female Asylum, and that, upon the death of Minnie M. Rings, her portion should thereafter be paid to the use and benefit of the Buffalo Hospital of the Sisters of Charity.

One of the original declarations of trust was deposited, with the certificates of stock, with a safe deposit company, and another, original, was delivered to the beneficiaries.

Scoville died in 1891, and in the sixth article of his will he referred to the trust which he had attempted to create, directed his executors to carry out its terms, if possible; made a provision for the beneficiaries in case it could not be carried out, and in that event directed that the securities be deemed a portion of his residuary estate.

In an action brought for the construction of the declaration of trust, and for a direction as to the effect of the will upon it, the court held that the declaration was invalid as to all the beneficiaries and they appealed.

*Held,* that no trust whatever was created by the sixth article of the will, because the deed of trust was not incorporated in it, and no disposition of the property was made other than by reference.

That an unattested paper of a testamentary character could not be taken to be a part of a will, although referred to in the will.

That the separation of the shares by Scoville and his execution of the declaration were sufficient to subject the shares to the trusts, provided that the latter were valid under the statute.

That the trusts were void for the reason that they violated the statute against perpetuities.

That nothing was disposed of by the declaration except income; and that there was no disposition of the principal at any time, the income after the death of the first beneficiaries being directed to be paid to corporations which are supposed never to die.

That it was the testator's intention that the principal should always be kept *in solido,* and should never be released from the trust.

It was admitted that the gifts of income to the corporations were void.

*Held,* that the fact that upon the death of a beneficiary there would be a severance of a proportional part of the principal, made necessary because that part could no longer be employed for trust purposes, did not imply upon the part of Scoville an original intention to create for each beneficiary a separate trust in the principal proportioned to his interest. (Per Barrett, J.)

O'Brien, J., dissenting, holding that the trusts in favor of the Rings were valid and severable, and those in favor of the corporation were void.

Appeal by the defendants, Magdalena Rings, individually and as guardian of Henry C. Rings and Minnie M. Rings, Anna M. Rings, Henry C. Rings, Minnie M. Rings, the Buffalo Orphan Asylum, the St. Vincent's Female Orphan Asylum and the Buffalo Hospital of the Sisters of Charity, from the whole of a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 26th day of July, 1892, declaring a declaration of trust executed by Jonathan Scoville, deceased, void; that the will of Scoville did not create a valid trust in favor of the beneficiaries mentioned in the declaration, and that the property mentioned in the declaration must be deemed a part of Jonathan Scovill's residuary estate, excepting, however, that part of said judgment allowing costs to the attorneys out of the fund.

The case was tried by the court at the New York Special Term.

*J. G. Milburn,* for the appellants.

*S. Evarts,* for the respondents.

Van Brunt, P. J.:

This action was brought by the executors of the will of Jonathan Scoville, to obtain the determination of the court as to the validity of a certain trust attempted to be created by the testator, by an instrument in the form of a declaration of trust, and as to the effect and validity of the will of the testator in relation to such attempted trust, and the property affected thereby.

In January, 1887, the testator executed, in triplicate, a paper in the following words:

"Be it remembered that I, Jonathan Scoville, of the city of Buffalo, county of Erie and State of New York, owner of four hundred shares of the capital stock of the New York and Harlem Railroad Company, of fifty dollars each, and evidenced by four certain certificates thereof, numbered 21,815, 21,816, 21,817 and 21,818, respectively, have and do hereby dedicate and set apart, from and after the date hereof, in whose possession soever the said several certificates of stock may come without actual transfer, all and singular the net income and dividends hereafter to accrue and become due and receivable from time to time thereon, in trust to myself, or to any custodian in whose hands the said certificates of stock may be deposited by me, or by my order for the like purpose, and to and for the following uses and purposes, that is to say:

"The said net income or dividends of the said stock, as often as received, from time to time, shall be apportioned into ten equal parts, three of which parts shall be paid over to the use and benefit of Magdalena Rings, of Buffalo, N. Y.; three parts thereof shall be paid over to the use and benefit of Anna M. Rings, of the same place; two parts thereof shall be paid over to Henry C. Rings, of the same place, for and during his natural life, and two parts thereof shall be paid over to Minnie M. Rings, of the same place, for and during her natural life, provided, however, that in case of the decease or marriage of the said Magdalena Rings, or the decease of the said Anna M. Rings, whichever event shall first happen, then the portion so allotted to such person shall, from and after the happening of such event, be paid over to the use and benefit of the St. John's Episcopal Church and Society of the town of Salisbury, State of Connecticut, and the portion allotted to the other shall, after her decease (or marriage, if it be the said Magdalena), be paid over to the use and benefit of the Buffalo Orphan Asylum (Protestant) of the city of Buffalo, and upon the decease of the said Henry C. Rings, the portion so allotted to him shall thenceforth be paid to the use and benefit of the St. Vincent's Female Asylum of the city of Buffalo, and upon the decease of the said Minnie M. Rings, the portion so allotted to her shall be thereafter paid to the use and benefit of the Buffalo Hospital of the Sisters of Charity; and it is

hereby expressly provided, from and out of the said income so apportioned to the said Magdalena and Anna M. Rings, they shall each bear and pay an equal portion of the taxes, repairs and insurance of the premises this day leased to the beneficiaries herein named.

" For the purposes of this instrument, the said Magdalena Rings shall be considered the guardian of the property and rights of the said Henry C. Rings and Minnie M. Rings during minority, and upon her marriage or decease then the said Anna M. Rings, if surviving and unmarried, shall be deemed such guardian; otherwise, a guardian for the said minors shall be duly appointed.

" The right to cancel or otherwise modify this instrument at any and all times is hereby expressly reserved to me, notwithstanding any provision herein contained

" Witness my hand, this fifth day of January, A. D. 1887.

" JONATHAN SCOVILLE."

One of the originals, and the certificates of stock mentioned in it, and which are the subject-matter of the trust, were then deposited in a sealed envelope in the box of Scoville in the Mercantile Safe Deposit Company, of the city of New York. Another of the originals was delivered to the beneficiaries named in the trust; and the remaining one was delivered to and deposited with one M. A. Whitney, a lawyer in the city of Buffalo. Scoville died on the 4th of March, 1891, leaving a last will and testament dated the 27th of December, 1890, and a codicil thereto bearing date the 21st of February, 1891, which were duly admitted to probate and letters testamentary issued thereon. At the time of the death of said Scoville the deed of trust and certificates still remained in the envelope with the seal unbroken, and deposited with the Mercantile Safe Deposit Company.

The sixth article of Scoville's will refers to this deed of trust and is as follows:

" *Article Sixth.* I have executed and deposited in the Mercantile Safe Deposit Company of the city of New York a certain deed of trust, which affects a portion of my estate, which portion is more particularly described in a paper inclosed with such deed of trust. I direct my executors to carry out the provisions of this deed of trust so far as they can, but in case any unforseen circumstances

should prevent its performance and execution in full, then I direct that the sum of two thousand dollars per annum be paid by my executors to the beneficiaries named in such deed of trust, in the proportions mentioned in such deed of trust and I direct that my executors set apart a sum sufficient to produce the net annual income of two thousand dollars, and to invest and reinvest the same, and out of the income fulfill my directions in that regard. Should any unforseen circumstances prevent the carrying out of the terms of said deed of trust, then the securities mentioned and connected therewith are to be deemed a portion of my residuary estate (but under no circumstances, in case it is deemed invalid, shall it affect this article)."

By the codicil the Farmers, Loan and Trust Company and one Locke were appointed trustees of the trusts expressed in or created by the said article 6 and other articles of the will.

The court at Special Term held the deed of trust invalid as to all the beneficiaries, and from the judgment thereupon entered this appeal is taken.

It is clear that there was no trust, valid or otherwise, created by the sixth article of the will, because the deed of trust is not incorporated in the will, and the sixth article by itself makes no disposition whatever of the property mentioned or referred to therein, and it can receive no validity by its reference to the deed of trust, because such deed was not incorporated in such will; it being the law of this State that an unattested paper, which is of a testamentary nature, cannot be taken as a part of the will, even though it be referred to by that instrument. In order that such a paper may have the force of a testamentary disposition of property it must be authenticated according to the provisions of our statute of wills, and the deed of trust not being so authenticated cannot be sustained as part and parcel of the will.

But we think that the separation by Mr. Scoville of these shares of stock from the bulk of his estate, and the execution by him of the declaration of trust (and, by execution, we include all that is a necessary element to a complete execution of an instrument), were sufficient to subject the shares of stock to the trusts set forth in such declaration, provided that a trust, such as was attempted to be created, was permitted by our statutes.

FIRST DEPARTMENT, DECEMBER TERM, 1892.

As was said in the case of *Barry* v. *Lambert* (98 N. Y., 306): "It is well settled that a trust in personal property may be created by parol, and that no particular form of words is necessary for its creation, but the words or acts relied on to effect that object should be unequivocal, and plainly imply that the party making them intended to divest himself of his interest in the property, and to hold it thereafter for the use and benefit of another. This is all that is required to create a trust even as against the owner, and although he continues to retain possession of the property devoted to the trust.'"

This brings us to the question whether the trust attempted to be created was one in contravention of the statute forbidding perpetuities.

A very brief examination of the deed of trust will show what the intention of the creator of the trust was. He refers to 400 shares of the capital stock of the New York and Harlem Railway Company, represented by four certificates, of which he is the owner; and he, by said deed of trust, dedicates and sets apart, from and after the date thereof, in whose possession soever the said several certificates of stock might come without actual transfer, all and singular the net income and dividends thereafter to accrue and become due and receivable from time to time thereon. This net income or dividends he directs to be apportioned into ten equal parts, three of which shall be paid to the use and benefit of Magdalena Rings, of Buffalo, N. Y., three parts thereof to the use and benefit of Anna M. Rings, of the same place, two parts thereof to Henry C. Rings, of the same place, for and during his natural life, and two parts to Minnie M. Rings, of the same place, for and during her natural life, with a proviso that in case of the decease or marriage of said Magdalena Rings, or the decease of said Anna M. Rings, whichever event should first happen, the portion allotted to such person should, from and after the happening of such event, be paid over to the use and benefit of a certain Episcopal church in the town of Salisbury, Conn., and that the portion allotted to the other should, after her decease (or marriage if it were the said Magdalena Rings), be paid over to the use and benefit of an orphan asylum in the city of Buffalo; and that upon the decease of said Henry C. Rings, the portion so allotted to him should thenceforth be paid to the use and benefit of the St. Vincent's Female Asylum of the city of Buffalo; and upon

the decease of said Minnie M. Rings, the portion allotted to her should be paid over to the use and benefit of the Buffalo Hospital of the Sisters of Charity.

It will thus be seen that there is no disposition of the principal forming the *corpus* of this trust fund, and it is perfectly clear that there was no intention upon the part of the creator of the trust to make any disposition of such principal, because, as soon as the first beneficiaries died, the direction is that the income should be paid to a corporation, which is supposed never to die, and it is income which is treated of all the time. It is plain that it was his intention that the trust fund should be kept *in solido* during all this time, because otherwise there could be no division of the income into ten parts as is directed. It is thus manifest that the absolute disposition of the whole *corpus* of this fund is suspended for more than two lives in being, and such was the intention of the creator of the trust.

It is, undoubtedly, true that income and principal given in equal shares, out of one fund kept *in solido* for mere convenience of investment, may be severed and independent trusts created for the several beneficiaries, and thus the shares and interests will be several, even though the fund remain undivided. (*Schermerhorn* v. *Cotting*, 131 N. Y., 60.) But upon an examination of the facts of that case it will be seen that the suspension of the power of alienation of the share of each of the beneficiaries was made to depend upon two lives in being only, and it was the plain intention of the testator that principal should descend absolutely upon the termination of such two lives in being. In the case at bar we look in vain for the expression of any such intention. Upon the contrary, there is no provision whatever for the vesting of the principal at any time; and the very fact that the creator of the trust provided that the second beneficiary of each one of these shares should be a corporation, and the gift is only of a certain share of income and not of principal, shows that all that he intended to give the corporation was the income and not the principal. It also shows the intention that none of the principal was to be released from the trust, and that only income, under any circumstances, was to be paid over. It seems to us that it is so plain that this was the intention of Scoville that, if the courts are to construe an instrument of this character as exhibiting an intention to create separate and distinct trusts rather than

to put one undivided fund in trust, then it will be impossible for the creator of a trust, however much he may desire to do so, to express any intention to have a fund remain *in solido*.

The rule undoubtedly is, with respect to instruments of this character, that, where it can be done without violence to the intention of the creator of a trust, that construction will be given to the clause which will sustain the intended trust rather than one that will defeat it. But where the general meaning of the language of the instrument shows that there was an intention to provide for an illegal extension of the trust term, and that any other construction will do violence to the plain language of the instrument, then the court can only found its judgment upon the manifest intention of the creator of the trust.

In the case at bar, as we have already seen, it was beyond question the intention of Mr. Scoville that the *corpus* of this fund should remain for an unlimited period yielding income, which he gave to the numerous beneficiaries mentioned in the trust deed. And this was a clear violation of the statute against perpetuities..

The judgment should be affirmed. with costs.

BARRETT, J.:

The appellants say that there must necessarily be an actual severance of a proportionate part of the principal upon the death of each of the first beneficiaries, because the gift of income to the second beneficiaries cannot take effect, such secondary gifts of income to the corporations being void.

Upon this, they contend that an original severance in law is to be implied, because so much of the principal, as may be thus released from the production of income, must go somewhere. This amounts to saying that, even if Mr. Scoville intended no severance, and although he certainly made no provision with regard to the principal, yet the law will insist upon and declare a severance for the purpose of sustaining the trust. This is carrying the doctrine of severance to an impossible extreme. There was here, in reality, no "severance" of principal, and that expression is misapplied. What the appellants mean is that, upon the death of each original beneficiary, a proportionate part of the principal will be incidentally released. But that release would not result from an original sever-

ance, but simply from the further non-employment of principal for the trust purpose.

I do not mean to say that the appellants concede that Mr. Scoville intended no severance. They *do* insist that his intention was to create separate trusts of properly proportioued principal. Where I essentially differ with them, however, is in finding such intention from the release of principal, which may result from the void gift of income to the corporations. No such intention can be inferred from a condition resulting solely from the testator's illegal purpose. On the contrary, the secondary gift of income to corporations plainly indicates an intention to keep the principal permanently employed, and to keep it, while so employed, *in solido*.

I agree with the presiding justice that the judgment of the Special Term was correct and should be, in all respects, affirmed, with costs.

O'BRIEN, J. (dissenting):

This action is brought by the executors of the will of Jonathan Scoville, deceased, to obtain a determination of the court as to the validity of a certain trust created by the testator by an instrument in the form of a declaration of trust, and as to the effect and validity of the will of the testator, in relation to such trust, and the property affected thereby.

In January, 1887, the testator executed a paper in the following words;

"Be it remembered, that I, Jonathan Scoville, of the city of Buffalo, county of Erie and State of New York, owner of four hundred shares of the capital stock of the New York and Harlem Railroad Company, of fifty dollars each, and evidenced by four certain certificates thereof, numbered 21,815, 21,816, 21,817 and 21,818, respectively, have and do hereby dedicate and set apart, from and after the date hereof, in whose possession soever the said several certificates of stock may come without actual transfer, all and singular the net income and dividends hereafter to accrue and become due and receivable from time to time thereon, in trust to myself, or to any custodian, in whose hands the said certificates of stock may be deposited by me or by my order for the like purpose, and to and for the following uses and purposes, that is to say :

"The said net income or dividends of the said stock, as often as received, from time to time, shall be apportioned into ten equal parts, three of which parts shall be paid over to the use and benefit of Magdalena Rings, of Buffalo, N. Y.; three parts thereof shall be paid over to the use and benefit of Anna M. Rings, of the same place; two parts thereof shall be paid over to Henry C. Rings, of the same place, for and during his natural life; and two parts thereof shall be paid over to Minnie M. Rings, of the same place, for and during her natural life, provided, however, that in case of the decease or marriage of the said Magdalena Rings, or the decease of the said Anna M. Rings, whichever event shall first happen, then the portion so allotted to such person shall, from and after the happening of such event, be paid over to the use and benefit of the St. John's Episcopal Church and Society of the Town of Salisbury, State of Connecticut, and the portion alloted to the other shall, after her decease (or marriage, if it be the said Magdalena) be paid over to the use and benefit of the Buffalo Orphan Asylum (Protestant) of the City of Buffalo, and upon the decease of the said Henry C. Rings, the portion so allotted to him shall thenceforth be paid to the use and benefit of the St. Vincent's Female Asylum of the City of Buffalo, and upon the decease of the said Minnie M. Rings, the portion so allotted to her shall be thereafter paid to the use and benefit of the Buffalo Hospital of the Sisters of Charity; and it is hereby expressly provided, from and out of the said income so apportioned to the said Magdalena and Anna M. Rings, they shall each bear and pay an equal portion of the taxes, repairs and insurance of the premises this day leased to the beneficiaries herein named.

"For the purposes of this instrument, the said Magdalena Rings shall be considered the guardian of the property and rights of the said Henry C. Rings and Minnie M. Rings, during minority, and upon her marriage or decease, then the said Anna M. Rings, if surviving and unmarried, shall be deemed such guardian; otherwise, a guardian for the said minors shall be duly appointed.

"The right to cancel or otherwise modify this instrument at any and all times is hereby expressly reserved to me, notwithstanding any provision herein contained.

"Witness my hand, this fifth day of January, A. D., 1887.

"JONATHAN SCOVILLE."

This, with the certificates of stock therein mentioned, was deposited in the Mercantile Safe Deposit Company of New York, and duplicates of the trust deed were deposited with the beneficiaries therein named, and with one M. A. Whitney, of Buffalo.

By the sixth article of the testator's will he provided as follows:

"*Article Sixth.*— I have executed and deposited in the Mercantile Safe Deposit Company of the City of New York a certain deed of trust, which affects a portion of my estate, which portion is more particularly described in a paper inclosed with such deed of trust. I direct my executors to carry out the provisions of this deed of trust so far as they can, but in case any unforseen circumstances should prevent its performance and execution in full, then I direct that the sum of two thousand dollars per annum be paid by my executors to the beneficiaries named in such deed of trust, in the proportions mentioned in such deed of trust, and I direct that my executors set apart a sum sufficient to produce the net annual income of two thousand dollars, and to invest and reinvest the same, and out of the income fulfill my directions in that regard. Should any unforeseen circumstances prevent the carrying out of the terms of said deed of trust, then the securities mentioned and connected therewith are to be deemed a portion of my residuary estate (but under no circumstances in case it is deemed invalid, shall it affect this article)."

By a codicil to the will the plaintiffs above-named were made executors, and it was also provided as follows:

" I make, constitute and appoint the Farmers' Loan and Trust Company of the City of New York and Franklin D. Locke, of the city of Buffalo, trustees of each and all the trusts expressed in or created by article second, article third, article sixth and article eleventh of my said will, as fully as if the said trust company and the said Franklin D. Locke were named as my donees or legatees in trust in said articles, and I direct my executors to do such acts as shall be necessary to effectuate this intent."

By the eleventh article of the will the above-named infant defendants Scoville are made residuary legatees in trust. In so far as the provisions of the deed of trust and the will are ineffectual to create a valid trust, the above-named infant defendants are entitled to share in the property covered thereby as residuary legatees.

The court decided adversely to the trust created by the trust deed and the will, and the beneficiaries mentioned therein have appealed to this court. The question presented is: 1. Whether the will, by the sixth article, either with or without the aid of the deed of trust, creates a valid trust under the laws of this State. 2. Whether the deed of trust by itself creates a valid trust.

We think that article sixth of the will, standing alone, creates no valid trust, because it makes no disposition of the property mentioned or referred to therein, and is, therefore, valueless as a disposition of property. Nor do we think it receives any support, or can be upheld, by its reference to the deed of trust, because the latter cannot be regarded as incorporated in or as a part of the will itself. This latter conclusion follows from the rule laid down in *Booth et al.* v. *The Baptist Church et al.* (126 N. Y., 215), wherein the court says: "It is unquestionably the law of this State that an unattested paper, which is of a testamentry nature, cannot be taken as part of the will, even though referred to by that instrument."

Disregarding, then, altogether the will, the question still remaining for our determination is as to whether the deed of trust by itself creates a valid trust.

It is insisted that when taken by itself it offends against the statute of perpetuities, and that at most it is but an expression of a voluntary promise or intention to do something in the future, and, therefore, does not create a valid trust. The former, viz., that the deed of trust was void, because it unlawfully suspended the power of alienation for more than two lives in being, was the view adopted by the learned trial judge. This conclusion and the question relating to the insufficiency of the deed as a declaration of trust may be considered together.

In *Barry* v. *Lambert* (98 N. Y., 306) it is said: "It is well settled that a trust in personal property may be created by parol, and that no particular form of words is necessary for its creation, but the words or acts relied on to effect that object should be unequivocal and plainly imply that the party making them intended to divest himself of his interest in the property, and to hold it thereafter for the use and benefit of another. This is all that is required to create a trust even as against the owner, and although he continues to retain possession of the property devoted to the trust."

Following in the wake of *Martin* v. *Funk* (75 N. Y., 134) are *Willis* v. *Smyth* (91 id., 297); *Mabie* v. *Bailey* (95 id., 206); *Barry* v. *Lambert* (98 id.; 300); *Van Cott* v. *Prentice* (104 id., 45); *McPherson* v. *Rollins* (107 id., 316).

Applying the above rule to the deed of trust, we think that the instrument cannot be regarded as a mere expression of a voluntary promise or intention to do something in the future, but is an explicit declaration of a trust which, under the authority, is all that is necessary to create the same. The power to revoke contained therein did not destroy it whilst it was unexercised, and Mr. Scoville died without exercising it. It is true that this declaration of trust does not deal with the principal, but with the income. But we do not regard this as material, because no valid distinction can be made in respect to the creation of a trust between the principal of a fund and the income of a fund, and we agree with the appellant in his view that " a person is clearly at liberty to create a trust with respect to the property itself, or the income derived from it, or both, and a declaration of trust which is efficacious to create a trust, as to the property itself, is equally efficacious, if apt words are used, to create a trust as to the income." (*McArthur* v. *Gordon*, 126 N. Y., 597; *Fagan* v. *Gurney*, 14 Week. Dig., 468; *Rosenburg* v. *Rosenburg*, 40 Hun, 91; *Stone* v. *Hackett*, 12 Gray, 227).

We think, therefore, that the instrument under consideration was a sufficient declaration to establish a trust, and a valid one, unless it contravenes some statute.

This brings us to the consideration whether it did violate the statute against perpetuities. To decide this question it is important, at the outset, to determine what Mr. Scoville intended to accomplish. There were 400 shares of stock, which were given to trustees with directions to receive the income, and divide the same into ten parts. Certain of these parts so divided, he gave to certain persons during their respective lives, and to one until her marriage; and after the death (and in the one case, marriage), of each of these beneficiaries, the portion so allotted to him or her was to go to a specific institution for an unlimited period of time. It should be noticed, however, that, on the marriage of one and the death of the other beneficiaries, the portion allotted to each beneficiary goes to a new beneficiary, and not to the survivors among the first beneficiaries named.

As said in *Vanderpoel* v. *Loew* (112 N. Y., 167): " The pivotal question in this case is the inquiry whether the testator meant to create one trust, enveloping the interests of all the beneficiaries, and holding them in its grasp until a final or ultimate division, or whether he intended to constitute five separate trusts, each to be measured by its own terms and having its own several purposes to accomplish."

Applying this test, we do not think there is here presented the case of the creation of a trust with reference to a single fund, the income of which is to be divided amongst four persons, or the survivor of them, as long as any of them is alive; but, as stated, upon the termination of the interest of each primary beneficiary, his portion goes to a new beneficiary whose interest then, for the first time, begins. It is true that there is no final and absolute gift to any person of the *corpus* of the fund covered by the trust ; but, we think, that one of two views must be held, either one of which is inconsistent with the conclusion reached by the learned trial judge, that there was a suspension of the power of alienation with respect to the *corpus* or principal of the fund, for more than two lives in being. Either the gift over is valid, and the institution designated is a new beneficiary, or, if invalid, then the parties who take the residuary estate under Mr. Scoville's will succeed. In other words, upon the death (and in one case, marriage), of any of the first beneficiaries, the portion of the fund out of which the income was derived must go to the new beneficiary, the institution designated, or to the residuary legatees, and thus that portion be severed from the general fund.

As was said in *Savage* v. *Burnham* (17 N. Y., 561, at p. 571):

" There is, indeed, but one fund which is embraced in a single trust, but the interests carved out of it are entirely distinct. The trust itself is necessarily divisible as often as the beneficial dispositions of the will call for a division and separation of any portion of the estate from the residue."

And in *Schermerhorn* v. *Cotting* (131 N. Y., 61), the court say:

" Income and principal given in equal shares out of one fund kept *in solido* for mere convenience of investment, may be severed and independent trusts created for the several beneficiaries, and

thus the shares and interests will be several, even though the fund remain undivided."

It will thus be seen that the circumstance of the fund being kept *in solido* is not controlling, and where an instrument creating a trust is susceptible of two constructions, the decisions show that the court always inclines to that one which will sustain, rather than destroy, the trust, and to that end will construe the instrument as being several in preference to regarding it as a single and indivisible trust. We think, therefore, that the appellant is right in the contention that, upon the death of each life beneficiary, the specific portion of the fund yielding the specific share of the income to which he or she was entitled is absolutely set free from any trust and is at once subject to separation and distribution; that there is nothing in the declaration of trust requiring or permitting the fund to be kept entire during the four lives. In our view, therefore, the trusts created in favor of the Rings are not void as offending against the statute of perpetuities.

The remaining question relates to the validity of the trust in favor of the institutions or secondary beneficiaries.

As well stated by the appellant, one of two views may be taken.

One is, that the title to the shares of stock is vested in a trustee, other than the institution, to receive the income and, on the death of each life beneficiary, to pay the share of the income which was payable to him or her to the institution named during an unlimited period. If that be the true view the trusts in favor of the institutions are invalid, as it is settled that a transfer of property to a party in trust to pay the income forever to a charitable institution, the institution not being the trustee, is invalid as an unlawful suspension of the power of alienation. (*Adams* v. *Perry*, 43 N. Y., 487; *Cottman* v. *Grace*, 112 N. Y., 299.) The other view is that the gift over to each institution is a gift of a specific portion of the income direct to the institution, without the intervention of a trustee, in which case, the gift being unlimited as to time, it would operate as a gift of the principal. (*Earl* v. *Grim*, 1 Johns. Ch., 494; *Hatch* v. *Bassett*, 52 N. Y., 359; *Wells* v. *Wells*, 88 id., 331; *Garret* v. *Rex*, 6 *Watts* [Penn.], 14; *Van Rensselaer* v. *Dunkin's Exrs.*, 24 Penn. St. 252; *Greene* v. *Wilbur* 15 R. I. 251.)

We think, upon the construction to be given to the deed of trust,

the first view should prevail, for the reason, as stated by the learned judge at Special Term, that "the principle that a general gift of the income of a fund making no mention of the principal is a gift of the fund itself, is not applicable. (*Hatch* v. *Bassett*, 52 N. Y., 359.) There is a mention of the principal, which is given to the trustees named, and I also think the income subject to the duties as to it of division and payment."

To this, little need be added, for, while the learned counsel for the appellants, with much ingenuity, suggests that it would be a a fair and reasonable construction to say that each trust terminated with the life of the beneficiary, followed by general and unlimited gifts of income to the various institutions, it will be noticed that there are no words in the instrument divesting the trustees of the title to the fund, but, on the contrary, it provides for a continuation of the original trust and the payment of the income only forever. Moreover, the language is not susceptible of the view that Mr. Scoville intended a general gift of the income to such institutions, but, by express language, he gave such income to trustees, who were to receive and divide the same in the manner provided in the instrument. As such a trust was invalid, we think the conclusion of the learned trial judge on this branch of the case was correct.

Having, therefore, reached the conclusion that the provision in favor of the Rings, the primary beneficiaries, was valid, and that relating to the institutions or secondary beneficiaries invalid, the question remains as to what effect the latter will have, if any, upon the former. We think that, although the trusts created in favor of the institutions are invalid, those in favor of the Rings, being severable and legal, can stand. (*Underwood* v. *Curtis*, 127 N. Y., 523.)

Upon the whole instrument, therefore, we are of opinion that a valid trust was created in favor of one of the Rings, until her marriage, and in favor of the others until their death, and that, upon the marriage of one or death of any of the beneficiaries, a portion of the fund, yielding the specific share of the income to which he or she was entitled, should be severed from the trust and pass into the residuary estate, and that the judgment should be accordingly modified, without costs.

Judgment affirmed, with costs.